IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| YVONNE UNDERHILL ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. CIV-13-1106-L |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ____). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **REVERSED and REMANDED** for further administrative proceedings.

I.    PROCEDURAL HISTORY

Plaintiff filed applications alleging disability beginning January 15, 2004. (TR. 26). At the hearing, Plaintiff amended her alleged onset date to December 1, 2008. (TR. 26). The applications were denied on initial consideration and on reconsideration at the administrative level. (TR. 26). At Plaintiff's request, a hearing *de novo* was held on July 26, 2011 .(TR. 42-71). At the hearing, Plaintiff appeared with counsel and testified in support

of the applications. (TR. 44-68). A vocational expert (VE) also testified at the request of the ALJ. (TR. 66-70). The ALJ issued his decision on May 11, 2012 finding that Plaintiff was not disabled. (TR. 26-34). The Appeals Council denied the Plaintiff's request for review, and thus, the decision of the ALJ became the final decision of the Commissioner. (TR. 5-7). This judicial appeal followed.

## II. THE ADMINISTRATIVE DECISION

In addressing the Plaintiff's disability applications, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity from her onset date so the process continued. (TR. 28). At step two, the ALJ concluded that Plaintiff had the following severe impairments: a mass or cyst on her back; and chronic right knee pain. (TR. 28). At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 29). At step four, the ALJ concluded that the Plaintiff is "capable of performing past relevant work as a daycare teacher." (TR. 32). The ALJ found that Plaintiff had the residual capacity (RFC) to perform the "full range of light work." (TR. 29). Consequently at step four the ALJ found the Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to benefits.

The ALJ went on to a step five analysis. The ALJ considered the testimony of the VE, used the Medical-Vocational Guidelines as a framework for decision making, and determined there were jobs existing in significant numbers in the national economy which

2

Plaintiff could perform. (TR. 32-34). Based the ALJ's findings at steps four and five, the ALJ determined that the Plaintiff was not disabled. (TR. 34).

### III. ISSUES PRESENTED

Plaintiff challenges the ALJ's decision claiming that the ALJ failed to properly evaluate the opinions of her treating physician, Nathan Boren, M.D; failed to properly evaluate the medical evidence; and failed to properly determine her credibility.

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

### V. MEDICAL EVIDENCE

Dr. Boren began treating Plaintiff for hypothyroidism, asthma, and vision loss in November, 2009. (TR. 305-314). Early in 2010, Plaintiff began receiving treatment from Dr. Boren for a mass in her back. (TR. 307-309). Plaintiff was referred to general surgeon Dr. Andrew Stevens at the Chickasaw National Medical Center in Ada, Oklahoma. (TR. 330). Dr. Stevens performed a surgical consultation on March 11, 2010. (TR. 332) and Dr. Jeremy White removed the mass on December 28, 2010. (TR. 347). According to laboratory testing, the mass in her back and chest wall had grown to a size of 24 x 12 x 4 centimeters and weighed more than 700 grams, or about 1.5 pounds at the time of removal. (TR. 358).

3

In October 2010, Plaintiff underwent a consultative physical examination performed by Mark Carlson who reported that Plaintiff's vision was 20/25 and 20/30 corrected and 20/50 uncorrected; and that she had decreased range of motion in her back, neck hips and shoulders, secondary to pain. Dr. Carlson also reported that Plaintiff had tenderness in her lumbosacral spine with muscle spasm at L1 to L4; that her heel walking was weak bilaterally; and that she has "a little bit of a right antalgic gait." (TR. 318). Dr. Carlson's assessment was of "[b]ack and chest wall mass causing difficulties in breathing and pain." (TR. 319).

In January 2011, Tom Dees, M.D., a non-examining State medical consultant, completed a physical RFC assessment in which he found that Plaintiff can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; and that she can sit, stand and/or walk (with normal breaks) for about 6 hours in an 8-hour workday. (TR. 403). Dr. Dees found that Plaintiff had no other postural, manipulative, visual, communicative or environmental limitations. (TR. 404-406).

In June 2011, Kenneth Wainner, M.D., another non-examining State medical consultant, completed a second physical RFC assessment in which he found that Plaintiff can occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds; and that she can sit, stand and/or walk (with normal breaks) for about 6 hours in an 8-hour workday. (TR. 519). Dr. Dees found that Plaintiff had no other postural, manipulative, visual, communicative or environmental limitations. (TR. 520-522).

In March 2012, Dr. Boren completed a Medical Source Statement (MSS) in which he found that Plaintiff can never lift or carry more than 10 pounds because of upper

extremity weakness and pain; and that cannot sit or stand for more than 20 minutes and cannot walk for more than 15 minutes without interruption. (TR. 616-617). Dr. Boren also found that Plaintiff cannot sit for more than four hours, stand for more than two hours or walk for more than one hour total in an eight hour workday. Dr. Boren further opined that Plaintiff would be required to lie down for one hour during an eight hour workday, and would require the use of a cane. Dr. Boren reasoned that such limitations were caused by Plaintiff's generalized osteoarthritis and neuropathic symptoms. Dr. Boren also stated that Plaintiff can only occasionally reach or push/pull with her hands because of decreased range of motion in her shoulders and upper body weakness; and that she could never use her feet for the operation of foot controls because of severe neuropathic symptoms in her feet. (TR. 618). As to postural limitations, Dr. Boren found that Plaintiff can never climb, stoop, kneel or crouch (TR. 619).

As to Plaintiff's hearing and vision, Dr. Boren found that Plaintiff does not retain the ability to hear and understand simple oral instructions and communicate simple information; and that her decreased vision caused Plaintiff to be unable to avoid ordinary workplace hazards, to read very small print, or to read ordinary book or newspaper print (TR. 619). Lastly, Dr. Boren concluded that Plaintiff can never tolerate exposure to unprotected heights, mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, extreme heat, or vibrations. (TR. 620).

## VI. ANALYSIS

### A. The Opinions of Dr. Boren

Plaintiff argues that the ALJ erred in his analysis of the opinions of Plaintiff's treating physician, Dr. Boren, as expressed in the MSS. When presented with opinions of a treating physician, the ALJ must "give good reasons" in his decision for the weight assigned to the opinion. 20 C.F.R. § 404.1527(d)(2). *See also* SSR 96-2p; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). The decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for "controlling weight." An ALJ should keep in mind that "it is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p; 20 C.F.R. § 404.1527(d)(2).

The Tenth Circuit described the required analysis of a treating physician's opinion in *Watkins v. Barnhart*, 350 F. 3d 1297, 1300-1301, (10th Cir. 2003):

> The analysis is sequential. An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188, at *2 (quotations omitted). If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.* The

> agency ruling contemplates that the ALJ will make a finding as to whether a treating source opinion is entitled to controlling weight.

The Court in *Watkins* further reasoned that

> Resolving the controlling weight issue does not end our review. In completing the analysis: adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.

*Watkins* at 1300; SSR 96-2p.

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight then in order to disregard or give "slight weight" to that treating physician's opinion, he must set forth "specific, legitimate reasons" for doing so. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). In *Goatcher v. United States Dep't of Health & Human Services*, 52 F.3d 288 (10th Cir. 1995), the Tenth Circuit outlined factors which the ALJ must consider in determining the appropriate weight to give a medical opinion.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 290; 20 C.F.R. § 404.1527(d)(2)-(6).

In his decision, the ALJ offered little in the way of analysis of the opinions of Dr. Boren. The ALJ offers only that

> These conclusions are inconsistent with the objective medical evidence, even within Dr. Boren's own notes. The statement "never" on certain postural activities and all environmental exposures frankly exaggerates the claimant's limitations. The claimant's inability to receive and understand simple oral instructions is beyond Dr. Boren's expertise; unsupported by any medical health treatment record; and contrary to the psychological consultant and State agency mental health reviewer.

(TR. 32). The ALJ's analysis is scant, thus defying meaningful judicial review.

The ALJ failed to engage in the required analysis. Dr. Boren's MSS specifically asks "[i]f a hearing impairment is present, does the individual retain the ability to hear and understand simple oral instructions and to communicate information?" (TR. 619). It is unclear why Dr. Boren would not be qualified to answer this question and the ALJ does not address why Dr. Boren's expertise would not allow him to determine that a patient he has seen at least 23 times has a hearing impairment that would cause the Plaintiff to be unable to listen to instructions and understand them. (ECF No. 20:14-16). The ALJ also considered several other medical reports. A vision test administered on March 8, 2011 showed that the Plaintiff's uncorrected vision was 20/150. But the ALJ considered the test "[i]ncomplete" because the optometry clinic noted "we have one more test we want to do on Ms. Underhill – But our machine is down." (TR. 31, 448). In discussing the opinion of Dr. Boren, the ALJ cites no objective evidence in the record contradicting these vision problems and does not address Dr. Boren's medical finding of decreased vision that supports the limitations shown in the MSS. The ALJ also states that "[n]o treating

physician has limited the claimant's driving privileges . . ." to support a finding that Plaintiff's vision is not a severe impairment but does not address the Plaintiff's testimony that she "almost ran over a guy" and that "they wanted to take her license away," or that she was pulled over and no longer drives. (TR. 29, 65-66).

On remand, the ALJ should make clear the specific legitimate reasons he has for giving little weight to the opinions of Plaintiff's treating physician, Dr. Boren. In doing so the ALJ should provide more to support his reasoning than general references to the medical record and the arguably stale medical evidence from non-examining agency physician, Dr. Dees, who completed his assessment 14 months prior to the MSS of Dr. Boren. (*See* ECF No. 14:18-19).

### B. Plaintiff's Credibility

Plaintiff also argues on appeal that the ALJ erred in his assessment of Plaintiff's credibility. (ECF No. 20:14-17). The legal standards for evaluating pain and credibility are outlined in 20 C.F.R. §§ 404.1529(c), 416.929 and SSR 96-7p, and were addressed by the Tenth Circuit Court of Appeals in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). First, the asserted pain-producing impairment must be supported by objective medical evidence. *Id.* at 163. Second, assuming all the allegations of pain as true, a claimant must establish a nexus between the impairment and the alleged pain. "The impairment or abnormality must be one which 'could reasonably be expected to produce' the alleged pain." *Id.* Third, the decision maker, considering all of the medical data presented and any objective or subjective indications of the pain, must assess the claimant's credibility. [I]f an impairment is reasonably expected to produce some pain,

allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence. *Id.* at 164. In assessing the credibility of a claimant's complaints of pain, the following factors may be considered.

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991). *See also Luna*, 834 F.2d at 165 ("The Secretary has also noted several factors for consideration including the claimant's daily activities, and the dosage, effectiveness, and side effects of medication.").

In *Kepler v. Chater*, 68 F.3d 387, (10th Cir. 1995), the Tenth Circuit determined that an ALJ must discuss a Plaintiff's complaints of pain, in accordance with *Luna*, and provide the reasoning which supports the decision as opposed to mere conclusions. *Id.* at 390-91. Though the ALJ listed some of these [Luna] factors, he did not explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible. *Id.* at 391. *Kepler* does not require a formalistic factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied. *Id* at 1372. In this case, the ALJ did offer some discussion of Plaintiff's credibility stating that

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged

> symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(TR. 30).

The ALJ's analysis required by *Kepler* is insufficient in that he neglects to adequately discuss Plaintiff's attempts to obtain relief, the levels of medication and their effectiveness, her daily activities, the frequency of medical contacts, or the consistency or compatibility of nonmedical testimony with objective medical evidence. The ALJ's analysis of Plaintiff's credibility amounts to little more than a restatement of the medical evidence where a more meaningful discussion is required. The ALJ concludes that Plaintiff statements "are not credible to the extent they are inconsistent" with his RFC. Indeed---they may be, but the ALJ's decision must *show* the reviewing court *how* they are not credible, otherwise judicial review is stifled.

The ALJ's credibility analysis is insufficient according to *Kepler*. On remand, the ALJ should analyze Plaintiff's credibility in accordance with *Luna* and *Kepler*, making express findings and citing specific evidence in the record that relates to Plaintiff's credibility.

Plaintiff's remaining assertions of error will not be addressed, however, on remand, the Commissioner must, of necessity, reconsider Plaintiff RFC.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties,

the undersigned magistrate judge finds that the decision of the Commissioner is not supported by substantial evidence and should be **REVERSED and REMANDED** for further administrative proceedings.

### NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **March 16, 2015**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

### STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on March 2, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE